We'll now take up the third case this morning, 23-4091, America West Bank Members v. Utah. Mr. Peck, whenever you're ready, we're ready for you. May it please the court, Robert Peck on behalf of the plaintiff repellents. Due process places a constitutional condition on the exercise of a power that Utah law and FURIA places in the hands of bank regulators. It means that subject to government deprivations, the person who is being deprived is entitled to a fair hearing at a meaningful time in a meaningful manner. This did not happen here. What due process does not tolerate is for the government to seize the property, including a bank said to be failing, deny hearing before the seizure, accomplishing that seizure ex parte, then transfer the property to a federal agency so that no post-seizure hearing could occur, and then claiming that any due process rights now belong to the federal agency. Now, as I understand it, your claim is against UDFI, and your argument in response to the Rooker-Feldman doctrine is with regard to UDFI's activities, not with regard to the state court's lack of a hearing, either pre-deprivation or post-deprivation. That is correct. The court had no obligation to give a post-deprivation hearing. It heard the matter as it was entitled to ex parte. So you don't have any problem with what the court did? No, and they don't mention due process. They don't consider due process. The FDIC in their brief has asked you to assume sub saliento that the court must have understood that they were denying due process. You can't read that out of the order of possession. The responsibility was entirely on Utah officials. And how could they have given you more due process? What did they do that deprived you of due process? Well, by transferring it to the FDIC, they foreclosed the right to have a hearing within 10 days, which we could have brought, and therefore challenged that process. And let's keep in mind, please, that, you know, when this action was filed, no one thought that there was a problem in raising the due process issue as it was in state court. It went up to the Utah Supreme Court. The Utah Supreme Court said it was still ripe to pursue the due process issue. So this case was refiled according to the instructions of the Utah Supreme Court in state court, and there was every right to seek a remedy based on the deprivation of due process. Probably with your argument, I think, let me ask you to tell me why I'm wrong about this, is that the immediate transfer to the FDIC deprived your client, the stockholder, of a post deprivation hearing, but you didn't allege in the complaint that there was a lack of a post deprivation hearing. We allege that there was a lack of procedural due process. Now, that procedural due process requires a hearing before the deprivation, but it is a defense to that. Well, wait, I thought you stated that you didn't. Right, and it is a defense to that, that a post deprivation can be held instead, and the Supreme Court has authorized that as a sufficient meeting of the procedural due process. And so while this is only at the complaint stage, this is a motion to dismiss based on Fariha. You have to identify the process you were denied. And we identified it, and in there we did say that there was no post deprivation hearing, and indeed as this case. You're saying you alleged in the complaint that there was a denial of due process based on the lack of. Yes, we detailed the. Of a post deprivation hearing? Yes, we do. Could you point me to that? It's not enough to just recite facts. You have to give your allegation of what was legally required. So if your statement of facts. I'm sorry, I don't know it off the top of my head, but. Well, I'll just. I'm not trying to test you, but I sure didn't see. I believe it was paragraph 175, if my memory is serving me right, because I'm not finding it immediately. But under PGRM, which we cite in our brief, even when you write your brief and you explain your response to the motion to dismiss, the Supreme Court has said you can take what's in the brief and assume that that basically is now incorporated into the complaint. So between the two of them, we have this covered. Now, whether you consider this a matter of prudential standing or call it third party standing, or as we really think it is, Article III standing with respect to the injury in fact, the question is, what is the injury and who does that injury occur to? And here it's clear. The FDIC is not injured. The bank is not injured. Its assets are not injured by this deprivation of due process. Only my client is injured. Well, let's say the American West Bank members sold their stock in the bank to Bob Bacharach, and now I am the stockholder. Well, I am going to be injured because the asset has diminished in value. And so isn't that the prototypical example of a derivative injury? That is a derivative injury if the asset is devalued, but the asset is not devalued by the lack of due process. The whole process of taking the bank is to preserve its assets and to increase its assets. So there's no injury to the bank or its assets. Okay. Maybe I'm misunderstood, but I thought the whole injury was from the UDFI's liquidation of the bank and then asking the court to approve the liquidation and then unilaterally transferring this diminished asset to the FDIC. So it all stems from the liquidation of the bank, which creates injury because it diminished the value of the asset that belonged to the American West Bank, right? I don't believe so because the assets are unaffected by the due process claim. The assets are not. The fact is, this is very much like in Levin. There was a duty of loyalty that was considered to be outside of Freya's grasp. And the reason it was, putting aside the derivative versus direct issue, the reason it was is because this was an injury for which the FDIC could never sue, for which it would not suffer, and that did not go to the bank's assets. There was essentially a person reporting directly to the bank owner before it was seized, who basically said, put more money in, put more money in, which was also occurring here, and doing so while knowing that the bank was going to be seized. The fact is, the seizure preserved assets. I have a question, if I may interrupt you for a moment. I can't hear you, sorry. I said I have a question. Yes. You kept talking. Normally, to have a claim of denial of due process, don't you have to show that you were entitled to some procedure and you were prejudiced by the denial of that procedure? What was your prejudice? Did you agree with that proposition? I do agree with that proposition. So what were you denied? What was the loss from the denial of procedure? There is a value in the procedure that allows you to show that the bank was not failing, even if you do not prevail, and that opportunity was denied. So the investment-backed interests of the holding company, essentially, was the property. Okay. Then you're saying that you had the right to make some showing that you were denied, that the bank was not failing when it was put into receivership. The process that was denied was there was an ex parte hearing to start with, and you say, well, that's okay if I have a hearing later on. We believe that's what the Supreme Court precedent says. And why were you denied the opportunity? How were you denied the opportunity for a later hearing? Doesn't the Utah statute provide for review in 10 days? Within 10 days, and gives you the opportunity to enjoin the process by which the bank was seized. But you cannot enjoin the FDIC. So you can enjoin the UDFI. Did you pursue that? What? Did you pursue that? We didn't. Under FREA, you could not do so. It would be nice if you let me ask the question. I'm sorry. I speak slowly sometimes, so you might think I'm finished. Your clients did not seek review within that 10 days to see if, perhaps, in this circumstance, the federal statute that says you can't enjoin the FDIC would be overridden by constitutional concerns for due process. But don't you have to pursue the relief that's provided on its face by the statute, rather than saying, well, we're going to lose if we try to pursue this? We believe it would have been futile. And under Patsy and cases like that in 1983, actions, you don't have to pursue futile actions. And it was futile because of your understanding of the statute saying you can't enjoin the FDIC. That's right. And we do not believe — Don't you think that would be overridden by a constitutional claim, that if you don't give us this right to review? That would be — I mean, that's what you're seeking here, saying there was a constitutional violation. Why could you not have argued that in proceedings in state court? Because we think it's very clear the UDFI denied us due process. We don't think the FDIC did. We don't think that their actions at all were part of that. But the process you were denied, as I understand it, is the right to show that the receivership was improper because the bank was not failing. And you could have obtained that relief through review, through the state processes. And you did not pursue those processes because you say, well, the FDIC statute would have barred an injunction. But you have a constitutional claim. I don't think the due process that we were denied was due from the FDIC. It was due from the UDFI. Well, it was due from the court. It was the court that had ordered the receivership. And that decision was without due process because you didn't have a chance to review it after the ex parte proceeding. But if the UDFI had held on to the bank and allowed for a hearing after that, we could have brought that case and had that hearing, regardless of what the court that ordered possession did. And so, therefore, there was nothing that the court did that denied us due process. It's what the UDFI did. Are you still advancing a claim, a 1983 claim, against Commissioner O'Leary, a fraud-based claim? Yes. We think that that's encompassed in our claim, that none of this is covered by either Rucker Feldman or by Faria's advancement of the claim. Now, let's keep in mind that under Faria 2, whether you're looking at Levin, whether you're looking at Zucker, whether you're looking at Barnes or Hines, every one of these cases, the court acknowledges that there are exceptions to the claims that the FDIC may have. And whether you say it's derivative, derivative ones, you're standing in the shoes of the corporation, you're seeking assets of the corporation logs, those are clearly covered by this provision. When you're talking about direct, there's different kinds of direct. And here, the FDIC cannot claim that it was denied due process, that it was injured by the denial of due process, that the bank was injured by the denial of due process, that its assets were injured by the denial of due process, or that they have claims to assets as a result of the denial of due process. None of that devolves onto the FDIC. And that is why Zucker says it's a limited decision. Hines says don't overread this decision. And that's why the duty of loyalty was considered not to be within the claim of Faria. Can I ask you, you said, I didn't really follow it. Early in that answer, you said that, I think you were talking about Barnes, and if the claim was derivative, I think you said, quote, it would fall within this provision. But I didn't know what you meant. Did you mean that under Barnes, if it was derivative, you lose? No, Barnes, no. This claim is not derivative. Barnes, it was derivative. If it is derivative, do you agree that there's a lack of standing? Yes, because derivative means that we are seeking funds that go to the bank or to its assets. By virtue of the diminished value of the asset. No, by virtue of the fact that the funds that we're seeking really ought to go to the bank, or claims of the bank, or claims that are assets of the bank. And here we deny that. And the fact of the matter is, as all of these cases make clear, constitutional claims are not covered by the Faria provision, and damaged claims are not covered by the Faria provision. That's why this purely damaged claim against UDFI should not be considered claims of the FDIC. May I ask another question? Yes. I'm still a little bit confused. It could just be me. So if you could walk me through. I am not clear on what your claims are that are still, that are before us, with respect to procedural due process. This is a pure. May I finish? I'm sorry. So I understand that you have the claim we've been discussing at length, the claim about the immediate appointment of the FDIC, and the procedural due process claim attendant to that. And then you have a claim against Commissioner Leary for fraud, for alleged fraud during the hearing. Is that correct? That's correct. And are those distinct? Those are distinct. Okay. So the district court, as I understood it, said that you did not effectively pursue that FDIC immediate appointment claim. You waived any, you didn't plead it, and you came up for the first time in the summary judgment process. So how are we to understand that procedural posture to consider your claim on the merits? Right. In our reply brief, we run through the claims in the complaint. And as I said, Paragraph 175, if memory is serving me correctly, really does make the claim that we said. We argued the whole due process issue in our brief opposing summary judgment and even more so in our brief asking for summary judgment on due process grounds. All of that was clearly before the court. And there's no procedural waiver. Thank you. Good morning, Your Honors, and may it please the court. I am Joseph Brooks from the FDIC Legal Division. It was a little bit of a hodgepodge, but more of the court handling this, perhaps in the reverse order one might have expected this case to be handled, because this is primarily a prudential standing case. What I would like to do, though, is quickly address the merits issues that the panel did, and hopefully there will be some time to talk about prudential standing at the end, although that might not be important. Judge Rossman, I think it's important when looking at the merits of this case to go directly to the question that you asked counsel. And whatever claims may have been raised in the complaint, whatever claims may have been addressed in the appellant's opening brief,  At pages one to two of the reply brief, AWBM does not seek compensation for the property taken. At page six, AWBM does not seek to reverse the transfer, nor does it seek compensation for the transfer. At seven, AWBM is entitled to redress, regardless of the propriety of seizing the assets and transferring them to the FDIC. And finally, at five, the ultimate concession. The gravamen of AWBM's complaint was the process utilized by Utah that deprived AWBM of notice and hearing, unquote. In this court's Elliott decision, the court held as follows. An entitlement to nothing but procedure cannot be the basis for a liberty or property interest, close quote. And absent a separate constitutionally protected liberty or property interest, there is no right to process. For that reason alone, the claims lack merit. Well, I'm not sure how that I agree that you get from A to Z. In paragraph 134 of the complaint, they predicate the lack of procedural due process on Commissioner Leary and UDFI's false statements and material omissions to the state court. So, I mean, that's their claim, right? Well, Your Honor, their claim, I believe, has three parts. They claim, one, they were denied a pre-deprivation hearing. They claim, secondly, they were denied a post-deprivation hearing. And they claim, third, that Commissioner Leary purportedly made fraudulent statements at the hearing that would have been corrected. Now, all of those problems would have gone away if AWBM had sought the hearing that was permitted within 10 days under Utah Law 7-2-3. A post-deprivation hearing is not necessary in urgent circumstances like this if a pre-deprivation hearing, if a post-deprivation hearing is allowed. And presumably- Well, how do you respond to their argument that they did not have an opportunity for a post-deprivation hearing because of subsection J in FERIA? That they are legally 100% wrong, and I rely on the primary case that they rely on in this appeal. In the Third Circuit's Hines case and also in the D.C. Circuit's James Madison case described at length in Hines, both of those courts held that, yes, 1821J bars an action for equitable relief against acts of an FDIC receiver as a duly appointed receiver. However, both cases also held that whether, if you are instead challenging the appointment of the receiver, 1821J does not bar that. And, in fact, under FERIA, in the case of- Well, they're not challenging the appointment of the FDIC as the receiver. They're arguing that the bank never should have been liquidated in the first place. Exactly, Your Honor. And that's exactly what they could argue in the Utah 7-2-3 hearing. And, of course, if the bank was improperly seized, the FDIC was improperly appointed by the very same party that seized that bank. And this is made clear in the Hines case where the court said, even though the statute in Pennsylvania, which is virtually identical to the Utah statute, even though that statute talks in terms of the commissioner itself, or the state secretary there being the receiver, the Third Circuit held that it naturally applies when, instead, the secretary appoints someone else as a receiver, including the FDIC. Both Hines and James Madison foreclosed their argument that they were barred by 1821J. That's just not the case. And in any event, you would have to interpret FRIREA that way because, as I said, it expressly provides for a challenge to the appointment of the FDIC as a receiver in instances where the appointment is by a federal official. It is silent as to what happens in instances like this where it's a state official. But in the absence of an opportunity for a post-deprivation hearing such as was clearly provided by 7-2-3, you would, of course, have a serious due process problem. There's none here. The only problem here is that AWBM made a decision on its own that it could not get an effective remedy by complying with the process created by Utah law. That is the only reason why we're here today. They themselves did not take advantage of that due process hearing. And Hines held— Do you think that forecloses all their claims? Yes, forecloses all their claims because even the contention about fraud on the part of the commissioner because he didn't present material information. Well, presumably, Your Honor, if they had the post-deprivation hearing afforded under Utah law, AWBM would present the information that they argue was withheld by Commissioner Leary. In fact, there was—the record makes clear there was no information withheld. As the judge himself pointed out, the language that's quoted in our briefs, the testimony was based on the FDIC report of examination of the information that was available. Is there anything to Appellant's argument that the speed with which everything occurred with the appointment deprived them of the ability to pursue the Utah process? No, because it presupposes that they had no opportunity to get that hearing because of the FDIC being appointed. They could have sought it. Now, would it be more difficult to unwind the transaction 10 days later? Perhaps. I don't know. The law provides that you get a remedy, not necessarily a perfect remedy. And the statutory language here under the Utah Code provided that the state court judge there had all kinds of ability. It says, and I'm quoting from 7-2-3C, it says, if he finds that the seizure was arbitrary or otherwise contrary to law, he shall order the commissioner to surrender possession of the institution in a manner and on terms designated by the court in the public interest. So he would have had wide equitable discretion to put the pieces back together to the extent that they could and to provide such other relief. Again, the only reason why AWBM never had an opportunity to present the information to the state court judge that they say Commissioner Leary should have presented is because they, as they said, consulted with counsel, reached the conclusion that it wasn't worth their while to do so. But that procedure was there. That was an adequate post-deprivation procedure. That is the holding of Hines. That is the principle case they rely upon. I don't see how that disposes of the fraud claim. Because if the fraud led to receivership and then it's difficult to unwind and there's some prejudice, which could happen because of the difficulty of unwinding, then the fraud caused damage that still extends after the 10-day hearing. Two points on that. The first one, well, let me make the second point. That is why this case is ultimately about credential standing or alternatively about waiver. Your Honor, you can— I would think it's also about—I would also think there's a Rooker-Feldman issue there, but go ahead. Well, there's not a Rooker-Feldman issue on the fraud claim because we do not contest that the district court correctly concluded that only as to the fraud claim because that was action of an individual, not by the state court judge. Well, I'm not sure we don't have to go into it. I'm not sure you're right about that. It's a subject matter jurisdiction issue, Your Honor, and certainly as to the pre- and post-deprivation hearings, that's correct. So first of all, there's the Rooker-Feldman issue. But let's take a further step back. They never raised the Rooker-Feldman issue. And they're not arguing that the court lacked jurisdiction. They're arguing that the court had jurisdiction. It is not raised but for a cursory reference, 28 pages into the brief, 12 lines deep in a footnote. And under this court's precedent— When you say never raised, you mean they never challenged the ruling on Rooker-Feldman? They never sufficiently preserved a challenge to the Rooker-Feldman ruling of the court below. But the court below didn't bar the fraud claim under Rooker-Feldman. No. And I'm not sure why not. I'm not sure either, Your Honor. I believe there's certainly colorful arguments that they did. But if that's jurisdictional, we have to address it, whether you waive it or not. Yes, Your Honor. And I think it is jurisdictional for a couple of reasons. But the primary one is, as I said, it's wrapped up in their due process claim. What really happened here, what they're really complaining about is not so much that Commissioner Lee did what he was said to have done, but they weren't given the opportunity to go to a hearing and to turn that around. And even so, this happened in the course of the proceeding. The state court judge had the report of examination before him. He had all of the information. He had the ability to say that this procedure was not done properly. So it's sort of wrapped up in the three decisions that the state court judge made. He, and this is on the record very clearly, it was the state court judge. This is, in essence, Campbell versus City of Spencer all over again. It wasn't the UDFI who decided they don't get a pre-determination hearing. It was the state court judge. State court judge heard the evidence. He had the petition in front of him. He had the report of examination in front of him. He was able to determine whether sufficient information was in front of him to justify the seizure of the bank, and he made that determination. But under Utah law, it's the Commissioner Leary who had the unilateral statutory power to seize the bank. Well, he didn't exercise that power, Your Honor. He instead went to court. Well, I thought the allegation was that he did exercise his right under Utah law to seize the bank. Utah law then requires post-seizure to go and get approval from the Utah state court, and I thought that's exactly what America West Bank members alleges. It was the initial step to seize the bank by Commissioner Leary that they're challenging. Well, if that's what they allege, they're totally wrong. Am I wrong about that? Excuse me, Your Honor. I think you're incorrect. Okay. Maybe because of the way it's presented. What happened here was there was no seizure of the bank. There was an ex parte hearing. On May 1, 2009, the UDFI went into the bank, excuse me, into the state court and filed a petition for an order of seizure. It then went to an ex parte hearing. Commissioner Leary testified before the state court, and also during that hearing, the FDIC stood up and said, in the event that Your Honor grants their petition and allows them to seize the bank, we, the FDIC, will accept the appointment as receiver. So the state court judge, okay, first of all, the state court judge was informed at the beginning of the hearing. He was informed that the bank had requested to be at the hearing, and the state court judge said the bank has no right. Rooker fell in. The second thing he did was he heard the evidence, and after hearing the evidence, and after hearing also that the FDIC would be immediately appointed, he said, I am granting the petition. The petition specifically authorizes Commissioner Leary to seize the bank, and it was pursuant to the petition granted by the court. And finally, Commissioner Leary, excuse me, the state court judge knew that Commissioner Leary would immediately appoint the FDIC. He also knew about 7-2-3 because that memorandum that was sent from the Utah Attorney General's office to Judge Morris ahead of the hearing explained exactly how it worked. So if, and as I've explained on the merits or not, but even if there were a problem here with the FDIC being immediately appointed, that was done with a full knowledge of the state court judge because his order also expressly and explicitly authorizes the appointment by Commissioner Leary of a receiver with the judge's full knowledge that the receiver appointed would be the FDIC, and they would accept the appointment immediately. So any consequences that could have flowed from that are necessarily wrapped up in the judge's order. Back to Judge Hartz, it's 100 percent correct that Rooker fell in Morris' case. And then in addition to that, as I've explained, if the court were to get through credential stand, if the court were to get through waiver, if the court were to get through Rooker fell in on the non-fraud-based claims and get to the merits, it is an alternative basis, because this was brief, although, that they were not entitled to anything other than what they received, and that 1827J did not bar them from seeking a hearing under Utah 7-3 in the state court. They had 10 days to seek the hearing, and they did not do it. And I see my time is up, and I'm happy to respond to any further questions. Thank you, counsel. Thank you. And we would ask that the district court's decision be affirmed. Case submitted. Counselor excused. Your time has expired, counsel. May I have a moment just to answer two questions? I thought you had plenty of time to present your case. I'll give you 30 seconds. First, it's paragraph 173 in the Second Amendment complaint. Second, Hines says that the effect would be dramatic and fundamental, but still reach the same result where a third part, basically they're saying that FREA does not cover that, which is of little consequence to the FDIC. We'll have an opportunity to study Hines, but that's not necessary. All right. And then the final thing is that we said throughout our brief, the opening brief, that this was an action against the UDFI. It was not about the state court. If I had brought the state court action and appeal, they would say there's nothing about your process. Your time has expired, counsel. Thank you, Your Honor. We understood. We got your argument. Case submitted. Counselor excused. We'll take a brief break. Next ten minutes, and we'll hear our final case of the day.